[No. B175450. Second Dist., Div. Three. Apr. 25, 2006.]

SYNGENTA CROP PROTECTION, INC., Plaintiff and Appellant, v. PAUL E. HELLIKER, as Director, etc., Defendant and Appellant; GUSTAFSON LLC, Real Party in Interest and Appellant.

DOW AGROSCIENCES LLC, Plaintiff and Appellant, v. PAUL E. HELLIKER, as Director, etc., Defendant and Appellant.

## COUNSEL

McKenna Long & Aldridge, Stanley W. Landfair, Joseph F. Butler, Robert S. Schuda, Shannon L. Fagan, Michael J. Stiles and Eric S.C. Lindstrom for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Tom Greene, Chief Assistant Attorney General, Mary E. Hackenbracht, Assistant Attorney General, William S. Abbey and Todd A. Valdes, Deputy Attorneys General, for Defendant and Appellant.

Murchison & Cumming, Edmund G. Farrell III, Gina E. Och; Kessler & Collins, Gary S. Kessler and Daniel P. Callahan for Real Party in Interest and Appellant.

## OPINION

**CROSKEY, J.**—Syngenta Crop Protection, Inc. (Syngenta), developed a substance known as metalaxyl, and Dow Agrosciences LLC (Dow) developed a substance known as oryzalin, both used as active ingredients in pesticides. Syngenta and Dow submitted to the state Department of Pesticide Regulation (the Department)[1] data concerning the health effects and environmental impacts of the active ingredients and obtained certificates of registration from the Department for products containing metalaxyl and oryzalin. Gustafson LLC (Gustafson), a pesticide manufacturer, later obtained registrations from the Department for pesticides containing metalaxyl, and other companies obtained registrations for pesticides containing oryzalin. Although the Department did not actually review data previously submitted to the Department by Syngenta and Dow to support the applications for registration by Gustafson and other subsequent applicants, the Department took into account its prior evaluation of those data in evaluating the later applications. Syngenta challenged the registrations and the Department's practices by filing a complaint and petition for writ of mandate in the superior court seeking declaratory and injunctive relief and a writ of mandate, and Dow did the same. Syngenta and Dow allege that in evaluating applications for registration, the Department "considered" data that Syngenta and Dow previously

---

[1] Paul E. Helliker is the director of the Department. The Department is part of the California Environmental Protection Agency. (Food & Agr. Code, § 11451.)

submitted to the Department, without their consent, in violation of former Food and Agricultural Code section 12811.5.[2]

On cross-motions for summary judgment or summary adjudication in the consolidated proceedings, the court awarded declaratory relief in favor of Syngenta and Dow, declaring that former Food and Agricultural Code section 12811.5 prohibited the Department from considering, "actively or passively," data submitted by an original registrant when considering a subsequent application for registration by another applicant who had not obtained the original registrant's written consent. The court did not determine whether the Department violated former section 12811.5, however, and denied injunctive relief. The court rejected other challenges to pesticide registrations and regulatory actions and granted summary adjudication against all counts other than the count for declaratory relief. Syngenta, Dow, the Department, and Gustafson all appeal the judgment.

We conclude that former Food and Agricultural Code section 12811.5 prohibited the consideration of data by the Department in the manner at issue here. We also conclude that there are triable issues of material fact as to whether the Department violated former section 12811.5, whether the Department's use of trade secret data constitutes an unconstitutional taking, and whether Syngenta and Dow are entitled to an injunction under the Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.); that Syngenta and Dow cannot establish a violation of the equal protection clause; and that the sustaining of demurrers to Syngenta's count for a writ of mandate was error. We conclude further that the Department failed to comply with procedural requirements of the Administrative Procedures Act (Gov. Code, § 11340 et seq.; APA) in adopting regulations and failed to comply with the Department's own regulation requiring public notice of regulatory amendments, and that the regulations are invalid.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Factual Background

Syngenta, through a corporate predecessor, invented metalaxyl and obtained its first registration of a pesticide product containing metalaxyl from

---

[2] Former Food and Agricultural Code section 12811.5 stated: "Except as provided in Section 13128, data, other than public literature, previously submitted to the director or the Administrator of the United States Environmental Protection Agency to support an application for the original registration of a pesticide, or to support an application for an amendment adding any new use to that registration and that pertains solely to that new use, shall not, without the written permission of the original data submitter, or its assigns or successors in interest, be considered by the director to support an application by another person."

the United States Environmental Protection Agency (U.S. EPA) in 1979 and from the Department in 1982. Syngenta submitted numerous studies concerning the chemistry, health effects, and environmental impacts of the substance in support of the federal and state registrations, as required by law. Syngenta no longer manufactures metalaxyl and now manufactures a replacement product known as mefenoxam. Syngenta notified the Department in May 1998 that it would not authorize the consideration of data previously submitted by Syngenta concerning metalaxyl to support any registration by another applicant.

Gustafson manufactures pesticide products known as Allegiance FL, Raxil XT, and Raxil MD, all containing metalaxyl. Allegiance FL was formerly known as Apron FL. Gustafson obtained its first California registration of Apron FL in 1984. Gustafson purchased metalaxyl from Syngenta at that time and obtained written authorization from Syngenta for the Department to consider data previously submitted by Syngenta to support the application for registration by Gustafson. Gustafson now purchases metalaxyl from another company, Nations Ag II, LLC (Nations Ag).

Gustafson applied to the Department to amend the registration of Allegiance FL in 1998 and applied for registration of the Raxil products in 2000. The Department issued notices in May 1999 and July 2001 stating that it intended to approve the applications. Gustafson withdrew the applications for registration of the Raxil products in August 2001, after Syngenta commenced this proceeding (case No. BC253673), and submitted new applications in November 2001. Gustafson submitted several studies concerning the health effects of the products in support of its applications and submitted a letter of authorization from Nations Ag allowing the Department to consider data previously submitted by Nations Ag concerning metalaxyl. Gustafson did not submit data previously submitted by Syngenta, refer the Department to data previously submitted by Syngenta in the Department's files, or obtain written authorization from Syngenta for the Department to consider data previously submitted by Syngenta.

Dow invented oryzalin and obtained registrations of pesticide products containing oryzalin from the U.S. EPA and the Department. Nations Ag and other companies later applied to the Department for registration of products containing oryzalin, but did not obtain written authorization from Dow for the Department to consider data previously submitted by Dow in support of the applications. The Department issued notices stating that it intended to approve the applications.

### 2. *Trial Court Proceedings*

Syngenta filed a combined complaint and petition for writ of mandate in the superior court in July 2001 (case No. BC253673). In its second amended complaint and petition filed in January 2002, Syngenta alleged that Gustafson's applications for registration were incomplete because they were not supported by the required data and that the Department improperly was considering or had considered data previously submitted by Syngenta to support the applications by Gustafson, without Syngenta's consent. Syngenta alleged counts for (1) a peremptory writ of mandate directing the Department to deny Gustafson's applications for registration of Raxil MD and Raxil XT, its application to amend the registration of Allegiance FL, and any application for a renewed registration of those products or of Apron FL, and to set aside the prior registration of Allegiance FL; (2) violation of former Food and Agricultural Code section 12811.5 and California Code of Regulations, title 3, section 6170, seeking a prohibitory injunction; (3) violation of the Uniform Trade Secrets Act, seeking a prohibitory injunction; (4) unlawful taking without just compensation under the United States and California Constitutions; (5) violation of the equal protection clauses of the United States and California Constitutions; and (6) declaratory relief, seeking a declaration that the Department's past, present, and future consideration of data previously submitted by Syngenta in support of an application for registration by another applicant, without Syngenta's consent, is unlawful.

Gustafson and the Department demurred, arguing with respect to the first count that mandamus was not available to compel the Department to perform a discretionary act in a particular manner. The court sustained the demurrers to the first count without leave to amend in March 2002 and later overruled the demurrers to other counts.

### 3. *Product Registrations*

The Department issued conditional registrations for the Raxil products in April 2002. The registrations were conditioned on Gustafson's submission of certain data. The Department apparently later issued renewed registrations for all three products.

### 4. *California Notice 2002-3 and Regulatory Amendments*

The Department issued California notice 2002-3 (the Notice) in April 2002 describing the general data requirements for registration of a new pesticide product containing a currently registered active ingredient. The Notice stated, "Some have incorrectly assumed that DPR [Department] has the same data requirements for registration actions, such as amendments to currently registered

pesticides and new products containing currently registered active ingredients, as it does for new pesticide products containing new active ingredients. This notice is intended to correct any misconceptions and to restate DPR's existing general data requirements for pesticide products." The Department provided no prior notice of the proposed Notice or opportunity to comment on the proposal as provided under the rulemaking provisions of chapter 3.5, article 5 of the APA (Gov. Code, § 11346 et seq.).

The Department proposed amendments to regulations in April and July of 2002 and characterized the amendments as changes without regulatory effect (Cal. Code Regs., tit. 1, § 100). The Department proposed to amend section 6170, subdivision (a) of title 3 of the California Code of Regulations, pertaining to registration of pesticide products, by adding the italicized language: "All data submitted *by the applicant* to the *U.S.* EPA in support of federal registration *of the product* shall be submitted and all studies shall be submitted in full." (Italics added.) The Department proposed to amend section 6172, subdivision (a) by deleting the bracketed language: "The following data shall be submitted with every application for registration. [¶] (1) Acute oral and dermal LD[50] data on the product [and active ingredients]. [¶] (2) Acute LC[50] data on products which produce respirable aerosols or gases. [¶] (3) Primary eye and skin irritation data on the product [and active ingredients]." The Department also proposed to amend section 6200, subdivision (c) by deleting the bracketed language: "No conditional registration shall be granted unless the data includes all of the following: [¶] (1) Acute oral and dermal LD[50] data on the product [and active ingredients]. [¶] (2) Acute LC[50] data on products which produce respirable aerosols or gases. [¶] (3) Primary eye and skin irritation data on the product [and active ingredients]." The Department provided no notice of the proposed amendments or opportunity to comment on the proposals as provided under the rulemaking provisions of the APA, and did not prepare a "public report" as provided under the Department's regulations (Cal. Code Regs., tit. 3, § 6170). The Office of Administrative Law approved the amendments in June and August of 2002.

### 5. *Further Trial Court Proceedings*

Dow filed a combined complaint and petition for writ of mandate in the superior court in September 2002 (case No. BS078342). Dow alleged counts for (1) a peremptory writ of mandate directing the Department to refrain from considering data previously submitted by Dow in support of applications for registration by other applicants, without Dow's consent, and to deny applications for registration of certain products containing oryzalin or set aside completed registrations; (2) declaratory relief, seeking declarations that the Department's consideration of data previously submitted by Dow in support

of an application for registration by another applicant, without Dow's consent, is unlawful, and that applications for registration of products containing oryzalin by other applicants were incomplete and should be denied; (3) a permanent injunction to prevent the Department from considering data previously submitted by Dow in support of applications for registration by other applicants, without Dow's consent, and to require the Department to deny applications for registration of certain products containing oryzalin or set aside registrations; (4) violation of the Uniform Trade Secrets Act, seeking a prohibitory injunction; (5) unlawful taking without just compensation under the United States and California Constitutions; (6) violation of the equal protection clauses of the United States and California Constitutions; and (7) violation of the APA by adopting amendments to sections 6170, 6172, and 6200 of title 3 of the California Code of Regulations, and issuing the Notice, without providing public notice and an opportunity to comment. Dow also challenged the regulatory amendments and the Notice on the ground that they conflicted with former Food and Agricultural Code section 12811.5.

The superior court entered an order in November 2002 determining that the two proceedings were related and assigned the cases to the same judge, and consolidated the two proceedings for all purposes in January 2003.[3] Dow dismissed its count for a peremptory writ of mandate without prejudice in February 2003, and dismissed the complaint against Nations Ag and the other manufacturers after Dow provided a letter of authorization for the Department to consider data previously submitted by Dow.

Syngenta and Dow jointly moved for summary judgment or summary adjudication in October 2003. The Department moved for summary judgment or summary adjudication in both proceedings, and Gustafson also moved for summary judgment or summary adjudication. The trial court granted summary adjudication in favor of Syngenta and Dow on the count for declaratory relief with respect to Food and Agricultural Code section 12811.5, stating that the plain meaning of section 12811.5 is that the Department cannot consider, "actively or passively," data submitted by an "original registrant" to support an application for registration by another applicant, without the written consent of the original registrant. The court granted summary adjudication in favor of the Department and Gustafson on "all remaining causes of action," stating that there was no showing of imminent danger of irreparable harm to support an injunction; that the Department's "passive consideration" of data previously submitted by Syngenta did not constitute misappropriation under the Uniform Trade Secrets Act; that there was no constitutional taking as a matter of law, and that if there were a taking the remedy would be an action

---

[3] When separate actions are fully consolidated, " 'the allegations of the various complaints may be taken together and treated as one pleading' [citation]." (*McClure v. Donovan* (1949) 33 Cal.2d 717, 721–722 [205 P.2d 17].)

for inverse condemnation; and that there was no equal protection violation. The order did not address Gustafson's argument that Syngenta failed to exhaust its administrative remedies under Food and Agricultural Code sections 12825 and 12827, and did not specifically address Dow's challenges to the validity of the regulatory amendments and the Notice.

### 6. *Judgment and Postjudgment Motions*

The court entered a judgment in March 2004 declaring, "the Department may not, actively or passively, use or consider an original registrant's data in support of a subsequent application for registration of a pesticide product without the data owner's consent. The court does not adjudicate what data is required to be submitted by an applicant with, or considered by the Department in connection with, any particular application to register a pesticide product." The judgment also stated that summary adjudication was granted in favor of the Department and Gustafson on all other counts alleged by Syngenta and Dow.

Syngenta and Dow moved for a new trial and moved to modify the judgment, arguing that they were entitled to injunctive relief ordering the Department to set aside Gustafson's product registrations and prohibiting the Department from considering their data in support of applications for registration by other applicants, without their consent. They also argued that the court should specifically address Dow's challenges to the validity of the regulatory amendments and the Notice. The court denied the motions.

### 7. *2005 Statutory Amendment*

The Legislature passed an amendment to Food and Agricultural Code section 12811.5 in September 2005, after oral argument in this appeal. (Stats. 2005, ch. 612, § 6.) The amendment completely rewrote the statute. The statute now states, in part, "The director may rely upon any evaluations of previously submitted data to determine whether to accept an application . . . regardless of the ownership of the data previously evaluated." (Food & Agr. Code, § 12811.5.) Subdivision (a) states with respect to data currently required by the Department that if an applicant wishes to rely on data submitted by another entity after January 1, 1991, the applicant in certain circumstances must obtain written consent from the data owner, offer to pay the owner part of the cost of producing the data, or obtain the product from a source that, generally, has written consent from the owner or has offered to pay the owner part of the cost of producing the data. Subdivision (a) also states, "The director may rely upon data submitted prior to January 1, 1991 . . . to support any application or comply with any formal re-evaluation request for additional data, without permission from the data owner." (Food &

Agr. Code, § 12811.5, subd. (a).) Subdivision (b) imposes an additional requirement for data required by the Department after January 1, 1991, but not currently required, and states that in certain circumstances the applicant must either submit the required data, obtain written consent from the owner of data submitted after January 1, 1991, to rely on the data, offer to pay the owner, or obtain the product from a permissible source. Subdivision (d) states that if the parties cannot agree on payment terms, the applicant, source, or data owner may initiate a proceeding under the federal Insecticide, Fungicide, and Rodenticide Act (7 U.S.C. § 136 et seq.; FIFRA) to determine the amount due. Subdivision (f) states that if an applicant fails to satisfy these requirements, "the director shall cancel the registration of the pesticide product in support of which the data was used."

Food and Agricultural Code section 12811.5, subdivision (j) states, "No cost sharing as provided in subdivisions (a), (b), and (c) shall be required to support an application for annual renewal of a pesticide product registration, provided this provision shall not authorize renewal of a product registered prior to the effective date of this section if that registration is declared to have been unlawfully issued by a court of competent jurisdiction."

## CONTENTIONS

Syngenta and Dow contend (1) the Department uses or "considers," within the meaning of former Food and Agricultural Code section 12811.5, data submitted in support of their applications for registration to support subsequent applications by others, without their consent, when the Department does not require the applicant to submit comparable data on the same active ingredient, even if the previously submitted data are neither submitted with nor referenced in the subsequent applications and the Department does not actually review the data in connection with those applications; (2) that use by the Department is an unconstitutional taking, and (3) violates the Uniform Trade Secrets Act; (4) the Department violates the equal protection clause by requiring the initial applicant for registration of a product containing an active ingredient to submit more data than is required of a subsequent applicant for registration of a product containing the same active ingredient; and (5) the denial of injunctive relief and a writ of mandate was error. Syngenta and Dow also contend (6) they were not required to exhaust the administrative remedies provided by Food and Agricultural Code sections 12825 and 12827 because the Department has no established procedure for administrative review under the statutes, because administrative review under the statutes, if available, would provide no effective relief for their claims, and for other reasons; and (7) the Notice and regulatory amendments (i) conflict with former Food and Agricultural Code section 12811.5, Food and Agricultural Code sections 12824 and 12825, and the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.; CEQA), and (ii) were

not promulgated in compliance with the notice and comment procedures required by chapter 3.5, article 5 of the APA and the Department's own regulation, and therefore are invalid.

The Department contends (1) Food and Agricultural Code section 12824 creates a two-tier data requirement system that distinguishes an original application for registration of a product containing an active ingredient from a subsequent application for registration of a product containing the same active ingredient, and does not require that the same data be submitted by the subsequent applicant; (2) the Department did not consider data submitted by Syngenta and Dow when it reviewed applications by Gustafson and others; (3) there was a rational basis to require more data to support the applications by Syngenta and Dow than to support the later applications by Gustafson and others, and there was no discriminatory intent, so there was no equal protection violation; (4) there was no taking because (i) the voluntary submission of data by Syngenta and Dow to the Department when the Department had no obligation to protect the confidentiality of the data extinguished their property rights in the data, (ii) the data did not suffer a diminution in value, and (iii) the Department neither improperly used or considered data submitted by Syngenta and Dow when it reviewed applications by Gustafson and others nor did so for a public purpose; (5) the data submitted by Syngenta and Dow are not trade secrets under the Uniform Trade Secrets Act because the data are disclosable under FIFRA; (6) the amendments to the regulations had no regulatory effect and therefore required no notice and hearing; (7) the Notice was not a regulation or policy and therefore was not subject to the rulemaking procedural requirements of the APA; and (8) former Food and Agricultural Code section 12811.5 prohibited only the actual consideration of certain data by the Department, and did not prohibit "passive" consideration or use of data that was neither submitted to the Department nor cited in connection with an application.

Gustafson contends (1) Syngenta failed to pursue administrative remedies available under Food and Agricultural Code sections 12825 and 12827 in the manner required by the APA and therefore failed to exhaust its administrative remedies; (2) the challenges to Gustafson's prior registrations are moot because those registrations have expired; (3) the Department has broad discretion to develop and implement a program to evaluate pesticides and to determine what data are applicable to a particular application for registration, and Syngenta has not shown an abuse of discretion; (4) former Food and Agricultural Code section 12811.5 prohibited the Department from considering data previously submitted to the Department to support a later application by another applicant, without the prior applicant's consent, but did not prohibit "passive" consideration of previously submitted data that was not actually considered in connection with a later application, so the declaratory

judgment prohibiting the "passive" consideration of data was error; (5) the undisputed evidence shows that the Department did not consider data submitted by Syngenta in approving Gustafson's applications, so Syngenta is entitled to neither an injunction nor a writ of mandate; (6) there was no taking because the Department did not consider or use data previously submitted by Syngenta when the Department approved Gustafson's applications; and (7) there was a rational basis to require more data to support the applications by Syngenta and Dow than was required to support the later applications by Gustafson, and there was no discriminatory intent, so there was no equal protection violation.

The parties augmented their contentions in light of the 2005 amendment to Food and Agricultural Code section 12811.5. Syngenta and Dow contend (1) the amended statute governs only the Department's prospective use of data and has no effect on their rights with respect to the Department's past use of data; (2) in granting declaratory relief, the court correctly found that the Department unlawfully considered data previously submitted by Syngenta and Dow, without their written consent, in violation of former section 12811.5; and (3) they are entitled to a writ of mandate and a prohibitory injunction to prevent the Department from renewing registrations issued in violation of former section 12811.5, the takings clause, or the Uniform Trade Secrets Act and to compel the cancellation of registrations.

The Department and Gustafson contend (1) the amended statute renders moot the counts for a peremptory writ of mandate and injunctive relief based on the former statute because those counts seek only prospective relief, the Department's future conduct will be governed by the amended statute, and the amended statute allows the Department to rely on any evaluation of previously considered data; and (2) the court made no finding as to whether the Department considered data previously submitted by Syngenta and Dow without their written consent in violation of former Food and Agricultural Code section 12811.5. The Department also contends (3) the statutory amendment renders the other counts moot as well because the amended statute precludes any prospective relief based on alleged prior violations.

## DISCUSSION

### 1. Standard of Review

A party is entitled to summary adjudication of a cause of action if there is no triable issue of material fact and the party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subds. (c) & (f)(1).) A plaintiff moving for summary adjudication of a cause of action must establish each

element of the cause of action. (*Id.*, subd. (p)(1).) A defendant moving for summary adjudication of a cause of action must show that one or more elements cannot be established or that there is a complete defense. (*Id.*, subd. (p)(2).) A defendant can satisfy its burden by presenting evidence that negates an element of the cause of action or evidence showing that the plaintiff does not possess and cannot reasonably obtain needed evidence. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853–854 [107 Cal.Rptr.2d 841, 24 P.3d 493].) If the moving party satisfies its initial burden, the burden shifts to the opposing party to set forth "specific facts" showing that a triable issue of material fact exists. (Code Civ. Proc., § 437c, subd. (p)(1), (2).) The court must view the evidence and reasonable inferences from the evidence in the light most favorable to the opposing party, as on a motion for summary judgment. (*Aguilar, supra*, at p. 843.)

The ruling on a motion for summary adjudication presents a question of law, so our review is de novo. (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972 [103 Cal.Rptr.2d 672, 16 P.3d 94].) We ordinarily affirm the ruling if it is correct on any ground, regardless of the trial court's stated reasons. (*JEM Enterprises v. Washington Mutual Bank* (2002) 99 Cal.App.4th 638, 644 [121 Cal.Rptr.2d 458].) Before we can affirm the ruling on a ground not relied on by the trial court, however, we must afford the parties an opportunity to brief the issue on appeal, and the parties may request an opportunity to present additional evidence or conduct discovery on the issue. (Code Civ. Proc., § 437c, subd. (m)(2).)

### 2. *Statutory and Regulatory Framework*

█ All pesticides sold in the United States must be registered with the U.S. EPA before they are sold. (7 U.S.C. § 136a(a).) All pesticides sold in California also must be registered with the Department. (Food & Agr. Code, §§ 12811, 12993.) Federal regulation of the sale of pesticides is governed by FIFRA, while regulation of the sale of pesticides in California is governed by division 7, chapter 2 of the Food and Agricultural Code (Food & Agr. Code, § 12751 et seq.). In determining whether to register a pesticide, the U.S. EPA and the Department consider, generally, the environmental impacts of a pesticide, impacts on public health, and the accuracy of product labeling. (7 U.S.C. § 136a(c)(5); Food & Agr. Code, §§ 12824, 12825; Cal. Code Regs., tit. 3, §§ 6158, 6238, 6300.) A pesticide registration in California expires at the end of the calendar year, unless the registrant timely applies for renewal. (Food & Agr. Code, § 12817.)

Food and Agricultural Code sections 12824 and 12825 establish the basic requirements for California registration:

"The director shall endeavor to eliminate from use in the state any pesticide that endangers the agricultural or nonagricultural environment, is not beneficial for the purposes for which it is sold, or is misrepresented. In carrying out this responsibility, the director shall develop an orderly program for the continuous evaluation of all pesticides actually registered.

"Before a substance is registered as a pesticide for the first time, there shall be a thorough and timely evaluation in accordance with this section. Appropriate restrictions may be placed upon its use including, but not limited to, limitations on quantity, area, and manner of application. All pesticides for which renewal of registration is sought also shall be evaluated in accordance with this section.

"The director may establish specific criteria to evaluate a pesticide with regard to the factors listed in Section 12825. The department may establish performance standards and tests that are to be conducted or financed, or both conducted and financed, by the registrants, applicants for registration, or parties interested in the registration of those pesticides." (Food & Agr. Code, § 12824.)

"Pursuant to Section 12824, the director, after hearing, may cancel the registration of, or refuse to register, any pesticide:

"(a) That has demonstrated serious uncontrollable adverse effects either within or outside the agricultural environment.

"(b) The use of which is of less public value or greater detriment to the environment than the benefit received by its use.

"(c) For which there is a reasonable, effective, and practicable alternate material or procedure that is demonstrably less destructive to the environment.

"(d) That, when properly used, is detrimental to vegetation, except weeds, to domestic animals, or to the public health and safety.

"(e) That is of little or no value for the purpose for which it is intended.

"(f) Concerning which any false or misleading statement is made or implied by the registrant or his or her agent, either verbally or in writing, or in the form of any advertising literature.

"(g) For which the director determines the registrant has failed to report an adverse effect or risk as required by Section 12825.5.

"(h) If the director determines that the registrant has failed to comply with the requirements of a reevaluation or to submit the data required as part of the reevaluation of the registrant's product.

"(i) That is required to be registered pursuant to the federal Insecticide, Fungicide, and Rodenticide Act (7 U.S.C. Sec. 136 et seq.) and that is not so registered.

"In making a determination pursuant to this section, the director may require those practical demonstrations that are necessary to determine the facts." (Food & Agr. Code, § 12825.)

█ The Department's regulations require an applicant for registration to submit certain data in support of the application, including data on general toxicity, toxicity with respect to particular uses, efficacy of the product, and other data that the Department may require. (Cal. Code Regs., tit. 3, §§ 6170, 6172–6193.5; see Food & Agr. Code, § 12824.) The regulations state that the data submitted in support of federal pesticide registration under FIFRA substantially satisfy the data requirements for California registration, except as provided by regulation. (Cal. Code Regs., tit. 3, § 6159.) The regulations state that in lieu of submitting data, an applicant may reference data previously submitted by the applicant or data previously submitted by another person, if the data owner consents in writing. (Cal. Code Regs., tit. 3, § 6170, subd. (c).) The Department's pesticide registration program is a certified regulatory program under CEQA. (Pub. Resources Code, § 21080.5; Cal. Code Regs., tit. 14, § 15251, subd. (i).)

Former Food and Agricultural Code section 12811.5, enacted in 1996 (Stats. 1996, ch. 435, § 7, p. 2740), stated, "Except as provided in Section 13128, data, other than public literature, previously submitted to the director or the Administrator of the United States Environmental Protection Agency to support an application for the original registration of a pesticide, or to support an application for an amendment adding any new use to that registration and that pertains solely to that new use, shall not, without the written permission of the original data submitter, or its assigns or successors in interest, be considered by the director to support an application by another person."[4] The parties dispute the scope of this statutory prohibition on the consideration of data submitted by another applicant, particularly the meaning of "considered." Before addressing that question, we address the contentions by the

---

[4] An important difference between prior California law and FIFRA was that, after a 10-year period of exclusive use of data submitted to the U.S. EPA and an additional five-year period of compulsory compensation for use of data, FIFRA allows the U.S. EPA to consider data to support an application by another applicant without either the consent of the original applicant or compensation. (7 U.S.C. § 136a(c)(1)(F).) Food and Agricultural Code section 12811.5, as

Department and Gustafson that the 2005 amendment to section 12811.5 renders moot all or part of this proceeding and Gustafson's contention that Syngenta and Dow were required to exhaust administrative remedies but failed to do so.

### 3. *The Statutory Amendment Does Not Render This Proceeding Moot*

#### a. *Counts Based on Former Food and Agricultural Code Section 12811.5*

Syngenta and Dow seek only prospective relief for the Department's alleged violations of former Food and Agricultural Code section 12811.5 rather than damages for past violations. They originally sought a writ of mandate directing the Department to deny Gustafson's pending applications and set aside a completed registration, an injunction prohibiting the Department from considering previously submitted data without their consent, and a declaration as to the parties' rights and obligations under former section 12811.5. After the 2005 statutory amendment, Syngenta and Dow contend they are entitled to (i) a writ of mandate or an injunction directing the Department not to renew registrations issued in violation of former section 12811.5 and to cancel any improper registrations, and (ii) a declaration as to the parties' rights and obligations under former section 12811.5.

Because an injunction operates prospectively, an appellate court reviewing the ruling on an injunction ordinarily must apply the law currently in effect. (*White v. Davis* (1975) 13 Cal.3d 757, 773, fn. 8 [120 Cal.Rptr. 94, 533 P.2d 222].) The question now presented with respect to an injunction, however, is not whether the Department's alleged practice of considering previously submitted data without the data owner's consent violates current Food and Agricultural Code section 12811.5, but whether the current statute precludes the requested injunctive relief for violation of the former statute. The amendment became effective on January 1, 2006, and presumably operates prospectively only. (Gov. Code, § 9600, subd. (a); *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1208 [246 Cal.Rptr. 629, 753 P.2d 585].) The Department and Gustafson have not shown otherwise and have identified no language in the amended statute suggesting that any prior violations of former section 12811.5 by the Department are excused or that an applicant is entitled to maintain or renew a registration issued in violation of section 12811.5.[5] We therefore conclude the counts based on former section 12811.5 are not moot.

---

amended in 2005, allows the Department to rely on any evaluation of previously submitted data and provides for compulsory compensation by an applicant to the data owner for use of data in certain circumstances.

[5] We need not address the impact of Food and Agricultural Code section 12811.5, subdivision (j) in this regard.

b. *Counts Based on Other Laws*

The Department offers no persuasive argument why the amendment of Food and Agricultural Code section 12811.5 would render moot the counts based on laws other than former section 12811.5 and has identified no language in the amended statute suggesting that it was intended to immunize prior violations of other laws. We therefore conclude the counts based on other laws are not moot.

4. *Rules of Statutory Construction*

█ Statutory construction is a question of law that we review de novo. (*Barner v. Leeds* (2000) 24 Cal.4th 676, 683 [102 Cal.Rptr.2d 97, 13 P.3d 704].) Our task in construing a statute is to ascertain and effectuate the legislative intent. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715 [3 Cal.Rptr.3d 623, 74 P.3d 726].) The statutory language ordinarily is the most reliable indicator of legislative intent. (*Ibid.*) We give the words of the statute their ordinary and usual meaning and construe them in the context of the statute as a whole. (*Ibid.*) If the plain language of the statute is unambiguous and does not involve an absurdity, the plain meaning governs. (*People v. Garcia* (2002) 28 Cal.4th 1166, 1172 [124 Cal.Rptr.2d 464, 52 P.3d 648]; *People v. Ledesma* (1997) 16 Cal.4th 90, 95 [65 Cal.Rptr.2d 610, 939 P.2d 1310].) If the statute is ambiguous, we may consider a variety of extrinsic aids, including the apparent purpose of the statute. (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 776 [72 Cal.Rptr.2d 624, 952 P.2d 641].)

5. *Syngenta and Dow Were Not Required to Exhaust Administrative Remedies*

█ A party ordinarily must exhaust the administrative remedies available before seeking judicial relief. (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 321 [25 Cal.Rptr.3d 320, 106 P.3d 976].) The exhaustion of administrative remedies requires a party to pursue and obtain a decision from the final administrative decision maker before suing in court. (*Tahoe Vista Concerned Citizens v. County of Placer* (2000) 81 Cal.App.4th 577, 594 [96 Cal.Rptr.2d 880].) The exhaustion requirement affords the administrative agency an opportunity to correct any deficiency and avoid costly litigation or reduce the scope of litigation. (*Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 501 [87 Cal.Rptr.2d 702, 981 P.2d 543]; *Westlake Community Hosp. v Superior Court* (1976) 17 Cal.3d 465, 476 [131 Cal.Rptr. 90, 551 P.2d 410].) The exhaustion requirement also facilitates the development of a complete factual record and allows the agency to apply its expertise, both of which can assist later judicial

review, if necessary. (*Campbell, supra*, at p. 322; *Sierra Club, supra*, at p. 501.) The exhaustion requirement does not apply, however, if the Legislature indicates its intent to allow judicial relief notwithstanding the failure to exhaust administrative remedies by providing for a judicial proceeding as an alternative to the administrative remedy. (*City of Susanville v. Lee C. Hess Co.* (1955) 45 Cal.2d 684, 689 [290 P.2d 520].)

■ Food and Agricultural Code section 12825 states that the director of the Department, "after hearing," may cancel a registration or refuse to register a pesticide in certain circumstances, including if "the registrant has failed to comply with the requirements of a reevaluation or to submit the data required as part of the reevaluation of the registrant's product." (*Id.*, subd. (h).) Food and Agricultural Code section 12827 states that the director may cancel a registration or refuse to register a pesticide if the manufacturer "repeatedly violates any of the provisions of this chapter or the regulations of the director." Section 12827 also states that the proceedings must be conducted in accordance with the administrative adjudication provisions of the APA (Gov. Code, § 11400 et seq.).[6] Thus, Food and Agricultural Code sections 12825 and 12827 provide for a hearing and a decision by the director that a pesticide should not be registered or that a registration should be canceled, based on specified grounds. Government Code section 11503 states that a hearing to determine whether a license should be revoked should be initiated by filing an accusation, and Government Code section 11504 states that a hearing to determine whether a license should be issued or renewed should be initiated by filing a statement of issues.

■ Food and Agricultural Code section 12828 states, "Action by the director pursuant to Sections 12824, 12825, 12826, or 12827 is not a condition precedent to the institution of any action to prosecute a violation of the chapter." In our view, the term "prosecute" in this context is not limited to criminal prosecution, but also encompasses a civil action. (See Webster's 3d New Internat. Dict. (2002) p. 1820 [defining "prosecute" as, inter alia, "to institute legal proceedings with reference to"]; Black's Law Dict. (8th ed. 2004) p. 1258 [defining "prosecute" as, inter alia, "[t]o commence and carry out a legal action"].) We construe the plain language of section 12828 to mean that a decision by the director under Food and Agricultural Code section 12825 or 12827 to cancel a registration or refuse to register a pesticide is not a condition precedent to a judicial proceeding based on a violation of the applicable Food and Agricultural Code provisions. Because the exhaustion of

---

[6] Food and Agricultural Code section 12827 refers to "Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code." Chapter 5 was reorganized in 1995, and a new chapter 4.5 was created and made operative on July 1, 1997. (Stats. 1995, ch. 938, § 21, pp. 7127–7128.) Government Code section 11400, subdivision (a) states that any reference in a statute to a provision formerly found in chapter 5 should be deemed to refer to the superseding applicable provision in chapter 4.5.

administrative remedies under sections 12825 and 12827 would require obtaining a decision by the director, by relieving a plaintiff of the requirement to obtain a decision by the director, the Legislature effectively relieved a plaintiff of the requirement of exhaustion of administrative remedies. We therefore conclude that Syngenta and Dow are entitled to a judicial resolution of this matter notwithstanding their failure to pursue administrative remedies.[7]

6. *Former Food and Agricultural Code Section 12811.5 Prohibited "Consideration" of Data in the Manner at Issue Here*

Food and Agricultural Code section 12824 states that the Department "shall endeavor to eliminate from use in the state any pesticide that endangers the agricultural or nonagricultural environment, is not beneficial for the purposes for which it is sold, or is misrepresented," and states that the Department "shall develop an orderly program for the continuous evaluation of all pesticides actually registered." Section 12824 requires the Department to conduct "a thorough and timely evaluation" of a pesticide "[b]efore a substance is registered as a pesticide for the first time," and states that a pesticide also should be evaluated in accordance with the statute for purposes of a registration renewal. Section 12824 states that the Department "may establish specific criteria to evaluate a pesticide with regard to the factors listed in Section 12825," and that it "may establish performance standards and tests that are to be conducted or financed . . . by the registrants . . . ."

█ California Code of Regulations, title 3, section 6170 and other regulations describe the data that an applicant is required to submit in support of an application for registration, pursuant to Food and Agricultural Code section 12824. Food and Agricultural Code section 12825 lists several factors for the Department to consider in the evaluation of a pesticide and states that the Department may cancel the registration of or refuse to register a pesticide if any of the circumstances listed in the statute is present. Although sections 12824 and 12825 do not prominently use the word "data,"[8] it is apparent that the evaluation of a pesticide pursuant to the two statutes involves, among other things, the evaluation of data pertinent to the factors listed in section 12825.

---

[7] In light of our conclusion, we need not decide whether Syngenta and Dow have standing to file an accusation or a statement of issues to initiate a proceeding under Food and Agricultural Code section 12825 or 12827 or whether sections 12825 and 12827 apply to the violations alleged by Syngenta and Dow.

[8] The word "data" appears in the two statutes only in subdivision (h) of Food and Agriculture Code section 12825.

Later-enacted statutes also require the submission of data to the Department.[9] Food and Agricultural Code section 13127, part of the Birth Defect Prevention Act of 1984 (Food & Agr. Code, § 13121 et seq.), states that by December 31, 1985, the Department must identify 200 potentially hazardous pesticide active ingredients for which "the most significant data gaps" exist and must require registrants to submit data to fill the gaps. (*Id.*, § 13127, subd. (a).) Section 13127, subdivision (b), states that by the same date, the Department must establish a timetable to require registrants to fill all data gaps on all other pesticide active ingredients currently registered in California. Food and Agricultural Code section 13128 states, "No applicant for registration or current registrant of a pesticide who proposes to purchase or purchases a registered pesticide from another producer in order to formulate the purchased pesticide into an end use product shall be required pursuant to Section 13127 to submit or cite mandatory health effect data pertaining to the safety of the purchased product or to offer to pay reasonable compensation for the use of any such data if the producer is engaged in fulfilling the requirements of Section 13127."

Food and Agricultural Code section 13143, part of the Pesticide Contamination Prevention Act of 1985 (Food & Agr. Code, § 13141 et seq.), states that by December 1, 1986, registrants must submit to the Department certain information pertaining to each active ingredient in registered pesticides, and that after that date, each applicant for registration of a new pesticide must submit the information required by the Department pursuant to the act. (*Id.*, § 13143, subds. (a) & (e).) The Birth Defect Prevention Act and the Pesticide Contamination Prevention Act both incorporate a provision of FIFRA that provides for compulsory data sharing and compensation (7 U.S.C. § 136a(c)(2)(B)(iii)), for purposes of certain data required under the California acts. (Food & Agr. Code, §§ 13127, subd. (c)(1), 13146, subd. (c).)

Former Food and Agricultural Code section 12811.5 referred to the Department's consideration of data previously submitted by another applicant. In the context of a statutory and regulatory regime requiring applicants to submit data to the Department or cite data previously submitted and requiring the Department to thoroughly evaluate pesticides before they are registered, the reference in former section 12811.5 to data "considered" by the Department is reasonably susceptible of more than one construction. A narrow construction of "consider" the data is to review and think about the data in connection with the evaluation of an application. Syngenta and Dow construe the term "consider" more broadly. They argue that even if the Department did not actually review data that they previously submitted when it evaluated a pesticide manufactured by another applicant containing the

---

[9] Food and Agricultural Code sections 12824 and 12825 were first enacted in 1969. (Stats. 1969, ch. 1169, §§ 2, 4, p. 2262.)

same active ingredient, the Department took that data into account because it did not require the later applicant to submit comparable data, and therefore "considered" the data.

The legislative history of former Food and Agricultural Code section 12811.5 suggests that the bill was intended to prevent applicants from lawfully obtaining copies of data submitted by other applicants and submitting the data to the Department without the prior applicants' consent, and more generally to protect the original applicants' proprietary interests in the data submitted. An analysis by the Senate Rules Committee stated that the arguments in support of the bill were that it would "prevent the pirating of proprietary data using the federal Freedom of Information Act" and "provid[e] fairness to data generators." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 802 (1995–1996 Reg. Sess.) as amended June 11, 1996, p. 3.)[10] Apart from stating those general purposes, however, the legislative history is no more specific as to the meaning of "considered."

▮ Other language in former Food and Agricultural Code section 12811.5 supports the construction advocated by Syngenta and Dow. Former section 12811.5 stated, *"Except as provided in Section 13128*, data, other than public literature, previously submitted to the director or the Administrator of the United States Environmental Protection Agency to support an application for the original registration of a pesticide, or to support an application for an amendment adding any new use to that registration and that pertains solely to that new use, shall not, without the written permission of the original data submitter, or its assigns or successors in interest, be considered by the director to support an application by another person." (Italics added.) Food and Agricultural Code section 13128, quoted *ante*, contains no express exception to the prohibition stated in former section 12811.5. That is, section 13128 does not expressly provide that the Department may consider certain data previously submitted by another applicant without that applicant's written consent. Rather, section 13128 states that the Department cannot require an applicant or current registrant, pursuant to Food and Agricultural Code section 13127, to submit or cite certain data pertaining to a pesticide purchased from another producer or to offer to pay for use of the data, if the other producer is providing the data required under section 13127.

▮ The express exception stated in former Food and Agricultural Code section 12811.5 suggests that absent that exception the statute would prohibit the conduct described in Food and Agricultural Code section 13128. (See 2A Singer, Statutes and Statutory Construction (6th ed. 2000) § 47:11, p. 252 ["true statutory exceptions exist only to exempt something which would otherwise be covered"].) ▮ This suggests that the conduct described in

---

[10] We take judicial notice of the analysis.

section 13128 involves the Department's consideration of data submitted by another applicant without that applicant's written consent. Specifically, this suggests that when the Department, pursuant to section 13128, does not require an applicant or current registrant to submit or cite mandatory health effect data pertaining to the safety of a purchased product because the producer of the purchased product is submitting the data required under Food and Agricultural Code section 13127, the Department "considers" the data submitted by the producer within the meaning of former section 12811.5. We therefore conclude that the Legislature intended "considered" in former section 12811.5 to encompass the Department's reliance on data submitted by another applicant even if the later applicant did not submit or cite the data and the Department did not actually review the data in connection with the later application. The Department "considered" data submitted by another applicant by taking into account the fact that the other applicant submitted the data and by not requiring the later applicant to submit the same type of data.[11]

■ Our conclusion is consistent with the declaratory judgment construing former Food and Agricultural Code section 12811.5 to mean that the Department "may not, actively or passively, use or consider an original registrant's data in support of a subsequent application for registration of a pesticide product without the data owner's consent," although we intend our opinion to be more explanatory than the declaratory judgment, particularly its use of the word "passive." Moreover, the amendment of section 12811.5 makes it necessary to modify the declaratory judgment to state that the Department "could not," rather than "may not," consider, in the manner we have discussed, data previously submitted to the Department or the U.S. EPA by another applicant to support an application described in former section 12811.5 without the written consent of the data owner or its successor in interest. We affirm the summary adjudication in favor of Syngenta and Dow on the count for declaratory relief based on former section 12811.5 as so modified with the understanding that this opinion constitutes a declaration of the parties' rights and duties with respect to the statute. (*Bach v. McNelis* (1989) 207 Cal.App.3d 852, 872–873 [255 Cal.Rptr. 232]; see 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 832, pp. 291–292.)

---

[11] Our conclusion that former Food and Agricultural Code section 12811.5 prohibited the Department from considering data previously submitted to the Department without the data owner's consent does not compel the conclusion that the data owner could withhold its consent unreasonably. Moreover, a data owner was not necessarily entitled to an injunction to prevent the Department from considering the data. Rather, a court could determine that it would be unreasonable to prohibit future use of trade secret data, deny an injunction prohibiting future use, and condition future use on payment of a reasonable royalty. (Civ. Code, § 3426.2, subd. (b), discussed *post.*)

### 7. *Whether the Department Violated Former Food and Agricultural Code Section 12811.5 Depends on Triable Factual Issues*

Former Food and Agricultural Code section 12811.5 prohibited the Department from considering without written consent only data previously submitted "to support an application for the original registration of a pesticide, or to support an application for an amendment adding any new use to that registration and that pertains solely to that new use." (*Ibid.*) Contrary to the argument by Syngenta and Dow on appeal, the court in granting declaratory relief made no finding as to whether the Department considered data previously submitted by Syngenta and Dow without their written consent in violation of former section 12811.5.

Syngenta and Dow argued in their motion for summary judgment or summary adjudication that the Department considered data that they previously submitted to support later applications for registration by Gustafson and Nations Ag. Syngenta and Dow filed declarations with tables listing studies that they submitted to the Department to "support and maintain" registrations for pesticide products containing metalaxyl and oryzalin. They grouped the studies according to the registration criteria that the studies addressed. They also listed studies submitted by Gustafson and Nations Ag grouped by registration criteria. Syngenta and Dow argued that when Gustafson and Nations Ag failed to submit a study addressing a particular criterion, the Department considered studies previously submitted by Syngenta and Dow to fill the gap. Syngenta and Dow listed those previously submitted studies purportedly considered by the Department without their consent in appendices to their motion.

Syngenta and Dow presented no evidence, however, as to which of those studies they submitted "to support an application for the original registration of a pesticide, or to support an application for an amendment adding any new use to that registration and that pertains solely to that new use" (Food & Agr. Code, former § 12811.5). That is, Syngenta and Dow did not distinguish studies they submitted to support an original registration or an amendment adding a new use from studies they submitted for another purpose, such as certain data required under the Birth Defect Prevention Act or Pesticide Contamination Prevention Act.[12] We cannot determine on this record whether the Department improperly considered studies submitted by Syngenta and

---

[12] We need not decide whether particular studies submitted by Syngenta and Dow under the Birth Defect Prevention Act or Pesticide Contamination Prevention Act were submitted "to support an application for the original registration of a pesticide, or to support an application for an amendment adding any new use to that registration and that pertains solely to that new use" within the meaning of former Food and Agricultural Code section 12811.5. That determination is more appropriately made by the trial court.

Dow that were protected by former Food and Agricultural Code section 12811.5 or, if so, which studies the Department improperly considered. We therefore conclude that Syngenta and Dow are not entitled to summary adjudication of the count alleging violation of former section 12811.5.

The Department and Gustafson moved for summary adjudication on the count alleging violation of former Food and Agricultural Code section 12811.5 arguing that the Department did not improperly "consider" data previously submitted by Syngenta and Dow because it did not actually review the data in connection with applications by other applicants. The Department also argued that it was entitled to summary adjudication because Syngenta and Dow failed to specify in response to written interrogatories the data they submitted that purportedly was protected by former section 12811.5. The Department and Gustafson presented no evidence to show that the Department did not consider studies previously submitted by Syngenta and Dow that were protected by former section 12811.5, as we construe the former statute, and therefore are not entitled to summary adjudication on that basis. Moreover, we conclude that the interrogatory responses alone, in which Syngenta and Dow objected that the Department had failed to produce documents maintained by the Department containing the information requested, absent some further effort to enforce the discovery, do not show that Syngenta and Dow do not possess and cannot reasonably obtain needed evidence. (*Gaggero v. Yura* (2003) 108 Cal.App.4th 884, 891–892 [134 Cal.Rptr.2d 313].)

Although the court awarded Syngenta and Dow declaratory relief based on former Food and Agricultural Code section 12811.5, it denied a prohibitory injunction based on the statute and granted summary adjudication in favor of the Department and Gustafson on the count alleging violation of the statute. The order stated, "As declaratory relief is dispositive of the lawsuit, a ruling upon the remaining causes of action is somewhat academic. Nevertheless, the Director has requested a ruling as [to] the remaining causes of action. The court therefore grants the Defendant's and Real Party's cross-motions for summary adjudication as to all remaining causes of action for reasons stated in the official notes of the court reporter. These may be briefly summarized as follows: [¶] The second cause of action for injunctive relief is not sustained by the evidence, namely, there has been no showing of imminent danger of irreparable harm, or that the Director will, or threatens to, ignore the court's declaration in the absence of appellate relief."

■ "A permanent injunction is an equitable remedy for certain torts or wrongful acts of a defendant where a damage remedy is inadequate. A permanent injunction is a determination on the merits that a plaintiff has prevailed on a cause of action for tort or other wrongful act against a

defendant and that equitable relief is appropriate." (*Art Movers, Inc. v. Ni West, Inc.* (1992) 3 Cal.App.4th 640, 646 [4 Cal.Rptr.2d 689].)

▇▇ Civil Code section 3422 states that a court may grant a permanent injunction "to prevent the breach of an obligation existing in favor of the applicant: [¶] 1. Where pecuniary compensation would not afford adequate relief; [¶] 2. Where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief; [¶] 3. Where the restraint is necessary to prevent a multiplicity of judicial proceedings; or, [¶] 4. Where the obligation arises from a trust." The first two statutory grounds embody the requirement that to obtain an injunction a plaintiff ordinarily must show that the defendant's wrongful acts threaten to cause irreparable injury, meaning injury that cannot adequately be compensated in damages. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1352 [1 Cal.Rptr.3d 32, 71 P.3d 296].)

▇▇ We construe the court's ruling to be not that the threatened injury was adequately compensable in damages, but that the award of declaratory relief rendered the request for an injunction moot or made it unlikely that a violation would recur. We conclude that the court erred. A declaratory judgment is a cumulative remedy and does not preclude additional relief based on the same facts. Code of Civil Procedure section 1062 states, "The remedies provided by this chapter are cumulative, and shall not be construed as restricting any remedy, provisional or otherwise, provided by law for the benefit of any party to such action, and no judgment under this chapter shall preclude any party from obtaining additional relief based upon the same facts." Moreover, absent a determination as to which of the studies previously submitted by Syngenta and Dow the Department considered in violation of former Food and Agricultural Code section 12811.5 and which registrations were improper, if any, there is no basis to conclude that the Department will cancel or refrain from renewing those unidentified registrations in the future.

### 8. *Whether the Department's Use of Data Was a Taking Depends on Triable Factual Issues*

▇▇ The Fifth Amendment to the United States Constitution and article I, section 19 of the California Constitution prohibit the taking of private property for public use without just compensation. The takings clauses of the United States and California Constitutions protect not only tangible property, but also intangible trade secret property rights protected by state law. (*Ruckelshaus v. Monsanto Co.* (1984) 467 U.S. 986, 1003–1004 [81 L.Ed.2d 815, 104 S.Ct. 2862]; see *City of Oakland v. Oakland Raiders* (1982) 32 Cal.3d 60, 67–68 [183 Cal.Rptr. 673, 646 P.2d 835].)

▇▇ *Ruckelshaus v. Monsanto Co., supra,* 467 U.S. 986, addressed the question whether a taking occurs when the U.S. EPA considers data submitted

by an applicant for pesticide registration in evaluating an application by another applicant, or publicly discloses the data. The *Monsanto* court stated, "It has never been the rule that only governmental acquisition or destruction of the property of an individual constitutes a taking." (*Id.* at p. 1004.) The court stated further that there was no " ' " 'set formula' " ' " to determine " ' "when 'justice and fairness' require that economic injuries caused by public action" ' must be deemed a compensable taking. [Citations.] The inquiry into whether a taking has occurred is essentially an 'ad hoc, factual' inquiry. [Citation.] The Court, however, has identified several factors that should be taken into account when determining whether a governmental action has gone beyond 'regulation' and effects a 'taking.' Among those factors are: 'the character of the governmental action, its economic impact, and its interference with reasonable investment-backed expectations.' [Citations.]" (*Id.* at p. 1005.) The court determined that the third factor was "so overwhelming" that it was the determining factor. (*Ibid.*) Accordingly, the *Monsanto* court concluded that a taking occurred only if at the time Monsanto submitted the data to the U.S. EPA, Monsanto had a "reasonable investment-backed expectation" that the U.S. EPA would not publicly disclose the data or consider the data in evaluating an application by another applicant without Monsanto's consent. (*Id.* at pp. 1005–1011.)

The *Monsanto* court determined whether Monsanto had a reasonable investment-backed expectation by reference primarily to the law in effect at the time Monsanto submitted the data. (*Ruckelshaus v. Monsanto Co., supra,* 467 U.S. at pp. 1005–1011.) After the effective date of the 1978 amendments to FIFRA, "Monsanto was on notice" that the amendments authorized the U.S. EPA to disclose publicly much of the data at any time, and authorized the agency to use the data without Monsanto's permission in evaluating the application of another applicant after 10 years and to do so without compensation to Monsanto after 15 years. (467 U.S. at p. 1006.) The court concluded, "If, despite the data-consideration and data-disclosure provisions in the statute, Monsanto chose to submit the requisite data in order to receive a registration, it can hardly argue that its reasonable investment-backed expectations are disturbed when EPA acts to use or disclose the data in a manner that was authorized by law at the time of the submission." (*Id.* at pp. 1006–1007.)

Between the effective dates of the 1972 and 1978 amendments, FIFRA explicitly prohibited the U.S. EPA from disclosing publicly or considering in connection with the application of another applicant data that constituted trade secrets. (*Ruckelshaus v. Monsanto Co., supra,* 467 U.S. at pp. 1010–1011.) The *Monsanto* court concluded that the U.S. EPA's disclosure or consideration of trade secret data submitted to the agency during that period "would frustrate Monsanto's reasonable investment-backed expectation with respect to its control over the use and dissemination of the data it

had submitted" (*id.* at p. 1011), and was a taking if "the use or disclosure conflicts with the explicit assurance of confidentiality or exclusive use contained in the statute during that period" (*id.* at p. 1013) and FIFRA's arbitration provision did not provide reasonable compensation for the resulting loss in market value of the data (467 U.S. at pp. 1013–1014).

Before the 1972 amendments, FIFRA neither authorized nor prohibited the U.S. EPA's disclosure or consideration of data submitted in connection with an application for registration. (*Ruckelshaus v. Monsanto Co., supra,* 467 U.S. at p. 1008.) The *Monsanto* court considered whether the federal Trade Secrets Act (18 U.S.C. § 1905) provided a basis for a reasonable investment-backed expectation of confidentiality. The Trade Secrets Act prohibited a federal government employee from "publish[ing], divulg[ing], disclos[ing], or mak[ing] known in any manner or to any extent not authorized by law" trade secrets or other confidential information received in his or her official capacity. (*Ibid.*) The *Monsanto* court concluded, "the Trade Secrets Act is not a guarantee of confidentiality to submitters of data, and, absent an express promise, Monsanto had no reasonable, investment-backed expectation that its information would remain inviolate in the hands of EPA. In an industry that has long been the focus of great public concern and significant government regulation, the possibility was substantial that the Federal Government, which had thus far taken no position on disclosure of health, safety, and environmental data concerning pesticides, upon focusing on the issue, would find disclosure to be in the public interest." (*Monsanto, supra,* 467 U.S. at pp. 1008–1009.) The court stated further that the Trade Secrets Act prohibited only public disclosure of confidential information and provided no assurance against internal agency use of data in connection with a subsequent application. (*Monsanto, supra,* at p. 1009 & fn. 13.) The court therefore concluded that Monsanto had no reasonable investment-backed expectation with respect to data submitted before the effective date of the 1972 amendments that the U.S. EPA would use the data only in connection with Monsanto's application for registration. (*Id.* at p. 1010.)

▮ Former Food and Agricultural Code section 12811.5 was enacted in 1996 (Stats. 1996, ch. 435, § 7, p. 2740) and became effective on January 1, 1997. (Gov. Code, § 9600, subd. (a).) Former section 12811.5 provided no basis for a reasonable investment-backed expectation of confidentiality as to data submitted before its effective date. (*Ruckelshaus v. Monsanto Co., supra,* 467 U.S. at pp. 1008–1010.) Former section 12811.5 prohibited the Department from considering without consent only data previously submitted "to support an application for the original registration of a pesticide, or to support an application for an amendment adding any new use to that registration and that pertains solely to that new use." (*Ibid.*) Syngenta and Dow first submitted data to the Department in support of applications for the original registration of pesticides containing metalaxyl and oryzalin in or about 1980 and 1974,

respectively. Syngenta and Dow have not shown that they submitted trade secret data to the Department in support of applications for the original registration of other pesticides containing metalaxyl and oryzalin, or for an amendment adding a new use to a registration, at any time after January 1, 1997, and therefore have not established a taking based on former section 12811.5. Conversely, the Department and Gustafson presented no evidence that Syngenta and Dow did not submit such data to the Department after January 1, 1997, or that Syngenta and Dow do not possess and cannot reasonably obtain needed evidence and therefore have not shown that Syngenta and Dow cannot establish a taking based on former section 12811.5. Accordingly, we conclude that no party was entitled to summary adjudication of this count.[13]

 We reject the Department's argument that Government Code section 6254.2, part of the California Public Records Act (Gov. Code, § 6250 et seq.), extinguished any reasonable expectation that the Department would maintain the confidentiality of data submitted or limit its use of the data. The California Public Records Act provides that public records are open to inspection by members of the public unless exempted by law. (*Id.*, §§ 6253, subds. (a) & (b), 6254.) Section 6254, subdivision (k) states that records are exempted from disclosure under the act if they are exempted from disclosure under federal or state law. Section 6254.2 provides that pesticide safety and efficacy information disclosable under 7 United States Code section 136h(d)(1) is disclosable under the act only if the person requesting the information is not an officer, employee, or agent of a business engaged in the production, sale, or distribution of pesticides in countries outside the United States and signs an affidavit stating that he or she will not disclose the information to such a business. (Gov. Code, § 6254.2, subds. (a) & (h).) The referenced FIFRA provision (7 U.S.C. § 136h(d)(1)) states generally that all information concerning tests performed on a pesticide or pesticide ingredient and all information concerning the effects of the pesticide on any organism or its behavior in the environment is available for disclosure to the public, but information that discloses either manufacturing or quality control processes or certain details concerning a deliberately added inert ingredient may not be disclosed. Section 6254.2, subdivision (i) also states that the Department in connection with certain public proceedings may disclose information submitted by an applicant in limited circumstances. Thus, although section 6254.2 provides for the disclosure of certain information, it does not provide for the disclosure of all data submitted to the Department. Moreover, section

---

[13] We construe the superior court's ruling that the appropriate remedy for a taking, if a taking were established, would be an action for inverse condemnation to mean that the court concluded that Syngenta and Dow are not entitled to declaratory or injunctive relief for a taking as alleged in the complaint. We need not decide the proper remedy if a taking is established, and therefore will not address the superior court's conclusion.

6254.2 does not authorize the Department to consider data submitted by another applicant and therefore could not extinguish a reasonable expectation based on former Food and Agricultural Code section 12811.5 that the Department would limit its use of the data.

 Section 6170, subdivision (c) of title 3 of the California Code of Regulations, which Syngenta and Dow also rely on, states in pertinent part, "Data previously submitted to the director may be used by any applicant when an authorization is submitted in writing to the Department, by the owner of that data." This regulation is substantially the same as former section 2369, subdivision (d) of title 3, first effective in February 1982, which stated, "Data previously submitted to the director may be used by any applicant when authorized in writing by the owner of that data." The regulation does not state that the Department may consider data previously submitted by another applicant *only* with that applicant's written consent. Thus, the regulation expressly authorizes the consideration of data previously submitted by another applicant with written consent, but does not expressly prohibit the consideration of such data without written consent. Because the regulation provided no "guarantee of confidentiality" or "express promise" (*Ruckelshaus v. Monsanto Co.*, *supra*, 467 U.S. at p. 1008) that the Department would not consider the data in connection with an application by another applicant, and in light of the possibility that the significant public concern and governmental interest in pesticide regulation would cause the Department to conclude that disclosure or consideration of the data was in the public interest, we conclude that the regulation provided no basis for a reasonable investment-backed expectation that the Department would limit its use of data submitted to the Department. (*Id.* at pp. 1008–1009.)

We also reject the argument by Syngenta and Dow that the Department's policy in the 1970's was not to consider data previously submitted by another applicant without that applicant's written consent, and that the policy provided the basis for their reasonable investment-backed expectation. Syngenta and Dow cite no evidence in the appellate record to support their claim that the Department had such a policy and have not shown that the purported policy rose to the level of a "guarantee of confidentiality" or "express promise." (*Ruckelshaus v. Monsanto Co.*, *supra*, 467 U.S. at p. 1008.)

 Finally, we reject the Department's argument that its consideration of data submitted by Syngenta and Dow, if the Department is deemed to have considered the data, was not for a public purpose. *Ruckelshaus v. Monsanto Co.*, *supra*, 467 U.S. at pages 1014–1015, held that the U.S. EPA's consideration of data submitted by a prior applicant, under FIFRA, was for a public purpose because Congress believed that allowing that consideration would eliminate costly duplication of research, streamline the registration process,

and promote competition among pesticide producers. The Supreme Court stated that it had "rejected the notion that a use is a public use only if the property taken is put to use for the general public. [Citations.]" (*Monsanto*, *supra*, at p. 1014, quoted with approval in *Kelo v. City of New London* (2005) 545 U.S. 469, 480, fn. 10 [162 L.Ed.2d 439, 125 S.Ct. 2655, 2663, fn. 10].) Similarly here, we conclude that the Department's consideration of data submitted by a prior applicant serves the same public purposes.

9. *Whether Syngenta and Dow Are Entitled to an Injunction Under the Uniform Trade Secrets Act Depends on Triable Factual Issues*

■ The Uniform Trade Secrets Act prohibits misappropriation of trade secrets. (Civ. Code, §§ 3426.2, 3426.3.) For purposes of the act, "trade secret" is defined as information that "(1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and [¶] (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (*Id.*, § 3426.1, subd. (d).) ■ The focus of the first part of the statutory definition is on whether the information is generally known to or readily ascertainable by business competitors or others to whom the information would have some economic value. (*DVD Copy Control Assn., Inc. v. Bunner* (2004) 116 Cal.App.4th 241, 251 [10 Cal.Rptr.3d 185]; see Rest.3d Unfair Competition, § 39, com. f, pp. 431–432.) Information that is readily ascertainable by a business competitor derives no independent value from not being generally known. (*American Paper & Packaging Products, Inc. v. Kirgan* (1986) 183 Cal.App.3d 1318, 1326 [228 Cal.Rptr. 713].)

■ "Misappropriation" is defined to include "use of a trade secret of another without express or implied consent by a person who: [¶] . . . [¶] [a]t the time of . . . use, knew or had reason to know that his or her knowledge of the trade secret was: [¶] . . . [¶] [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." (Civ. Code, § 3426.1, subd. (b).) The Uniform Trade Secrets Act does not define the term "use." The meaning of the term may vary depending on the context. We conclude that for purposes of pesticide regulation in California, the Department "uses" data when it "considers" the data within the meaning of Food and Agricultural Code section 12811.5. By taking into account its prior evaluation of an active ingredient based on data submitted by another applicant, the Department relieves a current applicant of the expense of producing or otherwise acquiring similar data and "uses" the data to the benefit of the current applicant. The Department's use of data in this manner is misappropriation under the act if (1) the data are trade secrets (Civ. Code, § 3426.1, subd. (b)(2)); (2) the Department uses the data without the express or implied consent of the data owner (*ibid.*); and (3) the Department knows or has reason to know that it

obtained the data under circumstances giving rise to a duty to limit its use of the data (*id.*, § 3426.1, subd. (b)(2)(B) & (b)(2)(B)(ii)). Accordingly, the superior court's ruling that the Department's "passive consideration" of data cannot be misappropriation under the act was error.

The Department contends the data submitted by Syngenta and Dow are not trade secrets under the Uniform Trade Secrets Act because the data are disclosable under the California Public Records Act (Gov. Code, § 6254.2, subd. (f)) and FIFRA (7 U.S.C. § 136h(d)(1)). We reject this argument because the Department has not shown that all of the data submitted by Syngenta and Dow are disclosable under 7 United States Code section 136h(d)(1).

Syngenta and Dow seek only an injunction to prevent misappropriation of trade secrets under the Uniform Trade Secrets Act and do not seek to recover monetary damages under the act. "Actual or threatened misappropriation may be enjoined." (Civ. Code, § 3426.2, subd. (a).) "If the court determines that it would be unreasonable to prohibit future use, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time the use could have been prohibited." (*Id.*, § 3426.2, subd. (b).) Thus, if Syngenta and Dow establish misappropriation by the Department, the court has the discretion to either prohibit the Department's future use of their trade secret data or condition the Department's future use on payment of a reasonable royalty.

Syngenta and Dow presented evidence in support of their motion for summary judgment or summary adjudication that they submitted to the Department hundreds of studies in support of their metalaxyl and oryzalin registrations. Syngenta filed a declaration stating that the data submitted to the Department "are not generally available to anyone outside the company," that when someone is allowed to view the data the viewing is governed by a strict confidentiality agreement, and that the data are not publicly disclosed or published without the company's prior written authorization. Dow filed no comparable declaration. Syngenta did not identify, however, which data have been publicly disclosed or published or which data are not generally known to the public or others who could benefit economically from their use or disclosure. Syngenta presented no evidence as to which data are trade secrets, a necessary element of its count for an injunction under the Uniform Trade Secrets Act. The same is true of Dow.[14] We therefore conclude that the denial of summary adjudication in favor of Syngenta and Dow on this count was proper.

---

[14] Syngenta and Dow did not identify the trade secret status of their data as an undisputed fact in their separate statement of undisputed facts (Code Civ. Proc., § 437c, subd. (b)(1)) filed in support of their motion for summary judgment or summary adjudication.

### 10. *Syngenta and Dow Cannot Establish an Equal Protection Violation*

Syngenta and Dow contend the Department treats them differently from subsequent applicants for registration of pesticides containing active ingredients contained in pesticides previously registered to Syngenta and Dow and for which they submitted data to the Department. They contend the Department's failure to require Gustafson and other subsequent applicants to submit data concerning those active ingredients is intentional discrimination and there is no rational basis for the unequal treatment.

 The federal equal protection clause (U.S. Const., 14th Amend.) and its California counterpart (Cal. Const., art. I, § 7, subd. (a)) prohibit the state and governmental entities from intentionally treating a person differently from others who are similarly situated if there is no rational basis for the unequal treatment. (*Village of Willowbrook v. Olech* (2000) 528 U.S. 562, 564 [145 L.Ed.2d 1060, 120 S.Ct. 1073]; *Warden v. State Bar* (1999) 21 Cal.4th 628, 644 [88 Cal.Rptr.2d 283, 982 P.2d 154].) To establish an equal protection violation based on the discriminatory application of a facially nondiscriminatory law, in a case that does not involve a suspect class or fundamental right, a plaintiff must prove that (1) the plaintiff was treated differently from persons similarly situated; (2) the unequal treatment was intentional; and (3) the unequal treatment was not rationally related to a legitimate governmental purpose.[15] (*Village of Willowbrook, supra*, at p. 564; *Snowden v. Hughes* (1944) 321 U.S. 1, 8 [88 L.Ed. 497, 64 S.Ct. 397]; *Warden, supra*, at pp. 641, 644; *Genesis Environmental Services v. San Joaquin Valley Unified Air Pollution Control Dist.* (2003) 113 Cal.App.4th 597, 605–606 [6 Cal.Rptr.3d 574]; cf. *Heller v. Doe* (1993) 509 U.S. 312, 319–320 [125 L.Ed.2d 257, 113 S.Ct. 2637].) The rational basis test does not involve an inquiry into the wisdom of legislation or other state action. (*FCC v. Beach Communications, Inc.* (1993) 508 U.S. 307, 313 [124 L.Ed.2d 211, 113 S.Ct. 2096].) Rather, we must reject an equal protection challenge to legislation or other state action "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. [Citations.] Where there

---

[15] For purposes of our analysis, we assume without deciding that the Food and Agricultural Code does not prescribe more rigorous data requirements for an active ingredient the first time it is evaluated than in a subsequent evaluation, consistent with the argument by Syngenta and Dow. We need not address the Department's contrary argument that Food and Agricultural Code section 12824 ("Before a substance is registered as a pesticide for the first time, there shall be a thorough and timely evaluation in accordance with this section") requires a thorough evaluation of an active ingredient the first time a pesticide containing the active ingredient is registered as a pesticide, but does not require a subsequent evaluation of the same active ingredient. Even if we agreed with the Department's argument, the result would be the same because there is a rational basis for the unequal treatment, as discussed *post*.

are 'plausible reasons' for [the] action, 'our inquiry is at an end.' [Citation.]" (*FCC, supra*, at pp. 313–314; accord, *Warden, supra*, at p. 644.)

We conclude that there is a rational basis for the different data requirements. The Department reasonably could conclude that after an active ingredient has been thoroughly evaluated in connection with the registration of a pesticide, another evaluation of the same active ingredient in connection with the registration of another pesticide probably would yield the same result. This does not excuse the subsequent applicant of all data requirements in connection with the new pesticide, but merely relieves the subsequent applicant and the Department of the expense and effort required to repeat the presentation of data and determination with respect to a particular active ingredient. We therefore conclude that summary adjudication of the count alleging an equal protection violation was proper.[16]

> 11. *The Notice and Regulatory Amendments Were Adopted in Violation of the APA and Therefore Are Invalid*

> a. *Statutory and Regulatory Framework*

Chapter 3.5, article 5 of the APA (Gov. Code, § 11346 et seq.) governs the adoption, amendment, and repeal of regulations by administrative agencies, commonly known as rulemaking. A "regulation" is defined as "every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure." (*Id.,* § 11342.600.) The act establishes "minimum procedural requirements" for rulemaking. (*Id.,* § 11346, subd. (a).) The agency must provide notice of the proposed action (*id.,* §§ 11346.4, 11346.5), the complete text of the proposal (*id.,* § 11346.2, subd. (a)), an initial statement of reasons for the proposal (*id.,* § 11346.2, subd. (b)), and a final statement of reasons (*id.,* § 11346.9, subd. (a)). The agency must provide a public hearing if an interested person timely requests a hearing (*id.,* § 11346.8, subd. (a)), provide an opportunity for interested persons to submit written comments if no hearing is held (*ibid.*), and respond in writing to comments in the final statement of reasons (*id.,* § 11346.9, subd. (a)(3)). The agency must submit the entire rulemaking file to the Office of Administrative Law (*id.,* §§ 11347.3, subd. (c), 11342.550), which reviews the regulation for compliance with law and other

---

[16] Although the superior court granted summary adjudication in favor of the Department and Gustafson on this count on another ground, supplemental briefing is not required under Code of Civil Procedure section 437c, subdivision (m)(2) because the ground on which we rely has already been briefed on appeal. (*Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1147, fn. 7 [135 Cal.Rptr.2d 796].)

criteria and approves or disapproves the regulatory action. *(Id.,* §§ 11349.1, 11349.3; *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 568 [59 Cal.Rptr.2d 186, 927 P.2d 296].)

 "No state agency shall issue, utilize, enforce, or attempt to enforce any guideline, criterion, bulletin, manual, instruction, order, standard of general application, or other rule, which is a regulation as defined in Section 11342.600, unless the guideline, criterion, bulletin, manual, instruction, order, standard of general application, or other rule has been adopted as a regulation and filed with the Secretary of State pursuant to this chapter." (Gov. Code, § 11340.5, subd. (a).) A substantial failure to comply with chapter 3.5 of the APA renders the regulation invalid. (Gov. Code, § 11350, subd. (a); *Tidewater Marine Western, Inc. v. Bradshaw, supra,* 14 Cal.4th at p. 576.) A court determining the validity of a regulation cannot consider the approval or disapproval by the Office of Administrative Law. (Gov. Code, § 11350, subd. (c).)

"One purpose of the APA is to ensure that those persons or entities whom a regulation will affect have a voice in its creation [citation], as well as notice of the law's requirements so that they can conform their conduct accordingly [citation]. The Legislature wisely perceived that the party subject to regulation is often in the best position, and has the greatest incentive, to inform the agency about possible unintended consequences of a proposed regulation. Moreover, public participation in the regulatory process directs the attention of agency policymakers to the public they serve, thus providing some security against bureaucratic tyranny. [Citation.]" *(Tidewater Marine Western, Inc. v. Bradshaw, supra,* 14 Cal.4th at pp. 568–569.)

 "A regulation subject to the APA thus has two principal identifying characteristics. [Citation.] First, the agency must intend its rule to apply generally, rather than in a specific case. The rule need not, however, apply universally; a rule applies generally so long as it declares how a certain class of cases will be decided. [Citation.] Second, the rule must 'implement, interpret, or make specific the law enforced or administered by [the agency], or . . . govern [the agency's] procedure.' ([Former] Gov. Code, § 11342, subd. (g) [now § 11342.600].) [¶] Of course, interpretations that arise in the course of case-specific adjudication are not regulations, though they may be persuasive as precedents in similar subsequent cases. [Citations.] Similarly, agencies may provide private parties with advice letters, which are not subject to the rulemaking provisions of the APA. ([Former] Gov. Code, §§ 11343, subd. (a)(3), 11346.1, subd. (a) [now § 11340.9, subd. (i)].) Thus, if an agency prepares a policy manual that is no more than a restatement or summary, without commentary, of the agency's prior decisions in specific cases and its prior advice letters, the agency is not adopting regulations.

[Citation.] A policy manual of this kind would of course be no more binding on the agency in subsequent agency proceedings or on the courts when reviewing agency proceedings than are the decisions and advice letters that it summarizes." (*Tidewater Marine Western, Inc. v. Bradshaw, supra,* 14 Cal.4th at p. 571.)

The statutory exemptions to the rulemaking provisions of the APA include an exemption for "A regulation that embodies the only legally tenable interpretation of a provision of law." (Gov. Code, § 11340.9, subd. (f).) The Department does not expressly rely on this exemption, but relies on section 100 of title 1 of the California Code of Regulations, a regulation adopted by the Office of Administrative Law.[17] Section 100, subdivision (a), states that an agency may amend a regulation without complying with the rulemaking procedures of Government Code section 11346 et seq., "only if the change does not materially alter any requirement, right, responsibility, condition, prescription or other regulatory element of any California Code of Regulations provision." Section 100, subdivision (a), denotes such a change a " 'change without regulatory effect,' " and lists as examples renumbering or reordering a provision; deleting a provision for which statutory authority has been repealed; deleting a provision held invalid by a California or federal court; revising structure, syntax, cross-reference, grammar, or punctuation; changing an authority cited for a regulation; and making a provision consistent with an amended California statute, provided that the former regulation was inconsistent with and superseded by the statutory amendment and "the adopting agency has no discretion to adopt a change which differs in substance from the one chosen." (Cal. Code Regs., tit. 1, § 100, subd. (a)(6)(B).)

The Department's own regulations also require the Department to provide public notice of a proposed amendment, adoption, or repeal of a standard or regulation of the pesticide regulatory program. (Cal. Code Regs., tit. 3, § 6110, subd. (a).)[18] The Department must prepare and post a "public report" summarizing the proposal and any expected environmental impact, provide the report to specified public agencies, and consider certain factors in making its decision on the proposal. (*Id.,* §§ 6110, 6116.) The stated purpose

---

[17] The Legislature authorized the Office of Administrative Law to adopt regulations to carry out the provisions of chapter 3.5 of the APA. (Gov. Code, § 11342.4.)

[18] Section 6110, subdivision (a) of title 3 of the California Code of Regulations states in part, "When the director proposes to amend, adopt, or repeal a standard or regulation of the pesticide regulatory program . . . , a public report shall be prepared allowing 45 days for the public to review each proposal. The public report shall be posted on the official bulletin boards of the Department, and of each commissioner's office, and in each District office of the Division of Pest Management, Environmental Protection and Worker Safety for 45 days. 'Standard,' as used in this article, means pest management guidelines, restricted materials hazard chart, pesticide safety information series, and similar documents."

of section 6110 is to provide for environmental review of the pesticide regulatory program to ensure compliance with Public Resources Code section 21080.5. (Cal. Code Regs., tit. 3, § 6100.)

###### b. *The Notice and Regulatory Amendments Are Regulations Subject to the Rulemaking Provisions of the APA*

■■■ The Notice purported to restate the Department's existing data requirements for pesticide products. It identified several "misconceptions" concerning the data requirements and letter of authorization procedure and stated the Department's understanding of the regulatory requirements. We conclude that the Notice is a regulation for purposes of the rulemaking provisions of the APA because the Notice provides a standard of general application that interprets the regulations concerning data requirements and letters of authorization. (Gov. Code, § 11342.600; *Tidewater Marine Western, Inc. v. Bradshaw, supra,* 14 Cal.4th at pp. 571–572.) The amendments to sections 6170, 6172, and 6200 of title 3 of the California Code of Regulations are regulations for purposes of the rulemaking provisions because Government Code section 11342.600 defines "regulation" to include an amendment to a regulation to implement, interpret, or make specific the law enforced or administered by the agency.

We conclude further that the Notice and regulatory amendments eliminated potential ambiguities in the regulations and therefore are substantive changes to the regulations and are subject to the rulemaking procedures of chapter 3.5, article 5 of the APA. The Notice identified several "misconceptions" concerning data requirements, including the conception that section 6170 of title 3 of the California Code of Regulations required an applicant for registration to submit to the Department "all data submitted to [the] U.S. EPA by any company to support the federal registration of all products containing the same active ingredient as the DPR applicant's product." The Notice stated that section 6170 actually required an applicant to submit to the Department all data that the applicant submitted to the U.S. EPA, but did not require submission of data concerning the same active ingredient that another applicant submitted to the U.S. EPA. At the time of the Notice, section 6170, subdivision (a) stated in relevant part, "All data submitted to the EPA in support of federal registration shall be submitted and all studies shall be submitted in full." That language reasonably could be interpreted to mean that all data submitted *by any person* to the U.S. EPA in support of federal registration must be submitted to the Department.[19]

---

[19] Our construction of former Food and Agricultural Code section 12811.5 does not compel the conclusion that an applicant could not be required to submit to the Department data submitted to the U.S. EPA by another person, or reference the data in the Department's files, in appropriate circumstances.

The Department's construction of former section 6170 of title 3 of the California Code of Regulations as stated in the Notice therefore was not "the only legally tenable interpretation of" the regulation. (Gov. Code, § 11340.9, subd. (f).) Moreover, the Notice was not a change without regulatory effect (Cal. Code Regs., tit. 1, § 100) because by resolving an ambiguity in former section 6170 the Notice materially altered the regulation. The question is not whether the Department's construction of former section 6170 was reasonable or consistent with its prior practice, but whether the Department's construction was the only legally tenable construction (Gov. Code, § 11340.9, subd. (f)) and did not materially alter any regulatory requirement (Cal. Code Regs., tit. 1, § 100). (See *Tidewater Marine Western, Inc. v. Bradshaw*, *supra*, 14 Cal.4th at p. 574 [rejecting the argument that the agency's interpretation of law was " 'the only reasonable interpretation' "].)

The amendments to sections 6170, 6172, and 6200 of title 3 of the California Code of Regulations conformed those sections to the rule stated in the Notice and materially altered other requirements. Thus, "All data submitted to the EPA in support of federal registration" in former section 6170, subdivision (a), became "All data submitted *by the applicant* to the U.S. EPA in support of federal registration" in amended section 6170, subdivision (a). (Italics added.) In sections 6172, subdivision (a) and 6200, subdivision (c) the Department amended language requiring "data on the product *and active ingredients*" to require only "data on the product" (italics added), thereby eliminating a potential ambiguity in the regulations by relieving applicants of the requirement to submit data on certain active ingredients. We reject the Department's argument that the regulatory amendments have no regulatory effect. The amendments do not reflect the only legally tenable construction of the former regulations (Gov. Code, § 11340.9, subd. (f)) and are not the sort of clearly nonsubstantive changes or changes compelled by law contemplated by section 100 of title 1 of the California Code of Regulations. Even if the amendments were consistent with the Department's practice under the former regulations, the Department was required to inform the public of the proposed formalization of that practice in amended, enforceable regulations.

The Department's complete failure to comply with the rulemaking procedural requirements of chapter 3.5 of the APA was a "substantial failure" (Gov. Code, § 11350, subd. (a)) and rendered invalid the Notice and regulatory amendments. In light of our conclusion, we need not decide whether the Notice and regulatory amendments conflict with the Food and Agricultural Code or with CEQA.

### c. *The Department Was Required to Prepare a Public Report for Each Regulatory Amendment*

The Department does not expressly address the contention that a public report under section 6110 of title 3 of the California Code of Regulations was required for the Notice and each of the regulatory amendments. The Department appears to rely implicitly on its argument that the Notice and amendments were without regulatory effect and merely restated existing regulations. We need not decide whether section 6110 requires a public report for a regulatory amendment that is "without regulatory effect" under section 100 of title 1 of the California Code of Regulations or one that states "the only legally tenable interpretation of a provision of law" (Gov. Code, § 11340.9, subd. (f)) because we conclude that the amendments here do not fit those descriptions, as discussed *ante*. Rather, the amendments to sections 6170, 6172, and 6200 of the California Code of Regulations materially altered those regulations, as we have stated. Moreover, we cannot conclude that the amendments would have no potential environmental impact or that public notice of the proposed amendments would not serve the purposes of section 6110. We therefore conclude that the proposed amendments were proposals "to amend . . . a standard or regulation of the pesticide regulatory program" (Cal. Code Regs., tit. 3, § 6110) for which public reports were required.

Syngenta and Dow do not argue that the Notice is a "regulation" or "standard" within the meaning of section 6110 of title 3 of the California Code of Regulations, do not explain why section 6110 should apply to the Notice, and therefore waive the argument that a public report was required with respect to the Notice. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481].)

### 12. *The Sustaining of the Demurrers to the Counts for a Writ of Mandate Was Error*

Syngenta contends it is entitled to a writ of mandate directing the Department to refrain from renewing any registrations issued in violation of former Food and Agricultural Code section 12811.5 and to cancel any registrations issued in violation of former section 12811.5. Syngenta contends the Department had a ministerial duty to refrain from using the data without its consent in violation of former section 12811.5 and has a ministerial duty to cancel any registration issued in violation of the former statute, Syngenta has a beneficial interest in the enforcement of those duties, and the sustaining of the demurrers to Syngenta's count for a writ of mandate was error.[20] The

---

[20] The sustaining of a demurrer to one of several causes of action is reviewable on appeal from a later judgment. (Code Civ. Proc., § 472c, subds. (b)(1) & (c).)

court sustained the demurrers on the bases that the Department had no ministerial duty to deny or cancel a registration, that Syngenta had no standing to enforce former section 12811.5 in a mandate proceeding, and that an injunction was the appropriate remedy.

On appeal from a judgment after a demurrer is sustained without leave to amend, we assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and facts of which judicial notice can be taken. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) We construe the pleading in a reasonable manner and read the allegations in context. (*Ibid.*) We determine de novo whether the pleading alleges facts sufficient to state a cause of action. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) We affirm the sustaining of the demurrer if the pleading or matters that are judicially noticeable disclose a complete defense. (*Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 324 [48 Cal.Rptr.2d 87, 906 P.2d 1242]; *Cochran v. Cochran* (1997) 56 Cal.App.4th 1115, 1120 [66 Cal.Rptr.2d 337]; see Code Civ. Proc., § 430.30, subd. (a).) We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

■■■■ A writ of mandate is available only if the respondent has a clear, present, and usually ministerial duty and the petitioner has a clear, present, and beneficial interest in the performance of that duty. (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916 [129 Cal.Rptr.2d 811, 62 P.3d 54]; see Code Civ. Proc., §§ 1085, 1086.) " 'A ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists.' " (*Kavanaugh, supra,* at p. 916.) Although a writ of mandate ordinarily cannot compel the exercise of discretion in a particular manner, a writ of mandate can compel a particular act if the failure to act in that manner was a clear abuse of discretion. (*Cuadra v. Millan* (1998) 17 Cal.4th 855, 871 [72 Cal.Rptr.2d 687, 952 P.2d 704], disapproved on another point in *Samuels v. Mix* (1999) 22 Cal.4th, 1, 16, fn. 4 [91 Cal.Rptr.2d 273, 989 P.2d 701]; *Sequoia Union High School Dist. v. Aurora Charter High School* (2003) 112 Cal.App.4th 185, 195 [5 Cal.Rptr.3d 86].)

Syngenta alleged in its combined complaint and writ petition that applications for registration that Gustafson submitted to the Department were

incomplete because they were not accompanied by all data submitted to the U.S. EPA in support of federal registration, as required by title 3, section 6170, subdivision (a) of the California Code of Regulations, and other data required by the Department's regulations. Syngenta also alleged that the Department had a duty to refrain from considering data submitted by Syngenta in evaluating the applications by Gustafson, a duty to deny any incomplete applications, and a duty to refrain from renewing any registration that was improperly issued. Syngenta alleged that it had no other adequate remedy at law. The Department and Gustafson demurred on the grounds that a writ of mandate cannot compel the Department to exercise its discretion in a particular manner.

We conclude that Syngenta alleged facts that if proved are sufficient to support the issuance of a writ of mandate. If Gustafson failed to submit all data required by law and the Department considered data previously submitted by Syngenta to fill the data gaps, each resulting registration issued by the Department was a clear abuse of discretion. In light of former Food and Agricultural Code section 12811.5, the only proper course of action in the event of an incomplete application that could be deemed complete only by reference to data previously submitted to the Department by another applicant who had not consented to the Department's current consideration of the data was for the Department to deny registration and cancel any registration issued in violation of former section 12811.5.

Syngenta also alleged facts sufficient to establish a beneficial interest in the Department's performance of its duty. "To have standing to seek a writ of mandate, a party must be 'beneficially interested' (Code Civ. Proc., § 1086), i.e., have 'some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.' [Citation.] This standard . . . is equivalent to the federal 'injury in fact' test, which requires a party to prove by a preponderance of the evidence that it has suffered 'an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." ' [Citation.]" (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 361–362 [87 Cal.Rptr.2d 654, 981 P.2d 499].) Syngenta's interest in the Department's compliance with Food and Agricultural Code section 12811.5 is to protect its proprietary interest in its own data. That interest is a special interest that is concrete, particularized, legally protected, and actually threatened by the Department's alleged conduct.

## *DISPOSITION*

The judgment is affirmed as to the count for declaratory relief as modified by this opinion. The judgment on the other counts is reversed with directions to the superior court to vacate the summary adjudication against the counts alleging violation of former Food and Agricultural Code section 12811.5, an unlawful taking, and violation of the Uniform Trade Secrets Act; grant summary adjudication in favor of Dow on the count challenging the validity of the Notice and amendments to sections 6170, 6172, and 6200 of title 3 of the California Code of Regulations; overrule the demurrers to the count for a writ of mandate; and conduct further proceedings consistent with this opinion. Each party must bear it own costs on appeal.

Klein, P. J., and Kitching, J., concurred.

The petitions of both plaintiffs and appellants for review by the Supreme Court was denied August 2, 2006, S144082. George, C. J., and Chin, J., did not participate therein.